**Kathleen and Michael HASLER, Plaintiffs-Appellants (82–1126), Plaintiffs-Appellees (81–1584),**

v.

**UNITED STATES of America, Defendant-Appellant (81–1584), Defendant-Appellee (82–1126).**

**Nos. 81–1584, 82–1126.**

United States Court of Appeals, Sixth Circuit.

Argued April 20, 1983.

Decided Oct. 7, 1983.

Rehearing and Rehearing En Banc Denied Dec. 23, 1983.

---

Leonard R. Gilman, U.S. Atty., Detroit, Mich., Debra D. Newman (argued), Trial Atty., Torts Branch, Civ. Div., Jeffrey Alexrad, Director, U.S. Dept. of Justice, Washington, D.C., for United States.

James A. Tucker, David M. Barbour (argued), Detroit, Mich., for Kathleen and Michael Hasler.

Before LIVELY, Chief Judge, MARTIN, Circuit Judge, and MARKEY, Chief Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

This appeal consolidates two aspects of a personal injury suit against the federal government for damages allegedly resulting from the plaintiff's inoculation with swine flu vaccine. Kathleen and Michael Hasler sued the United States pursuant to the Federal Tort Claims Act, U.S.C. §§ 1346(b), 2671, *et seq.*, in conjunction with the Swine Flu Program Act of 1976, 42 U.S.C. § 247b (1976). The district court found the United States liable under Michigan tort law and assessed damages against the government of $1.5 million for Mrs. Hasler's injuries and $50,000 for Mr. Hasler's derivative claim. *Hasler v. United States,* 517 F.Supp. 1262 (E.D.Mich.1981). The government appeals. In a second order, the court awarded the Haslers four percent per annum interest on the judgment pursuant to 28 U.S.C. § 2411(b). The Haslers appeal this determination.

The Swine Flu Immunization Program of 1976 was an attempt, underwritten by the federal government, to inoculate the entire population of the United States against swine flu. Several cases of swine flu, a type of influenza, were discovered in early 1976 at Fort Dix, New Jersey. Because the government feared that a pandemic, similar to that occurring in 1918, would ensue, Congress enacted legislation on August 12, 1976 implementing an inoculation program. 42 U.S.C. § 247b. Vaccinations began on October 1, 1976; were suspended on December 16, 1976; and then resumed on a limited basis in February, 1977. Nearly 45 million Americans were vaccinated in this time period.[1]

History demonstrates that no flu epidemic occurred during the winter of 1976–77. However, some individuals did experience harmful reactions to their swine flu vaccinations. The Swine Flu Act delineates the legal remedies available for these injured persons. The Act (1) creates a cause of action against the United States for any personal injury or wrongful death sustained as a result of the swine flu inoculation resulting from the act or omissions of a program participant upon any theory of liability that would govern in an action against such program participant including

---

* Honorable Howard T. Markey, Chief Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

1. For a more extensive discussion of the history and purpose of the Swine Flu Program, *see Gicas v. United States,* 508 F.Supp. 217, 218–219 (E.D.Wis.1981); and *Hasler v. United States,* 517 F.Supp. 1262, 1265–1266 (E.D.Mich. 1981).

negligence, strict liability in tort, and breach of warranty (42 U.S.C. § 247b(k)(2)(A)) (amended 1978); (2) makes that cause of action the exclusive remedy and abolishes the cause of action against the vaccine manufacturer (42 U.S.C. § 247b(k)(3)) (amended 1978); and (3) makes the procedures of the Federal Tort Claims Act applicable to suits brought pursuant to the Swine Flu Act. 42 U.S.C. § 247b(k)(4) (amended 1978).

Kathleen Hasler received a swine flu vaccination on November 24, 1976 at a local immunization center. Ten days later she developed a high fever, a rash, and pain and stiffness in her joints and muscles. At that time, her treating physician diagnosed her condition as adult onset of juvenile rheumatoid arthritis, known as Still's Disease. In late August, 1977, the treating physician changed his diagnosis to an acute rheumatoid-like condition secondary to the swine flu vaccination. *See* 517 F.Supp. at 1264–1265 for extensive facts.

The district court concluded that Mrs. Hasler had proven that the swine flu vaccine caused her rheumatoid arthritis. The court reasoned:

> In view of the fact that there were symptoms other than those found in the normal case of Still's Disease, namely rash, anemia, heart murmur, protein and blood in the urine, and because rheumatoid arthritis can result from an antibody antigen reaction and there was no significant medical history related to rheumatoid arthritis, it is reasonable for this Court to find as a matter of fact that the swine flu shot was the cause of plaintiff's rheumatoid arthritis. This is especially true in view of the temporal relationship. The sudden onset of the disease ten days after the swine flu shot—a fact which cannot be regarded by this Court as mere coincidence.

*Id.* at 1271. The court also found that the government, "under the Michigan law of either negligence, implied warranty or strict liability," had breached its duty to provide adequate warnings of potential health risks. *Id.* at 1269.

We consider first whether Kathleen Hasler demonstrated that the swine flu vaccine caused her rheumatoid arthritis. If she failed to prove causation by a fair preponderance of the evidence, then the government is not liable for her injuries, regardless of the inadequacies of its warning. We agree with the district court that causation is "[t]he most difficult and significant issue in this case." 517 F.Supp. at 1269. However, in contrast to the lower court, we find that the plaintiff has not carried her burden of proof.

■ Needless to say, pursuant to Fed. Rule Civ.P. 52(a), findings of fact by a district judge will not be reversed unless "clearly erroneous." Conclusions of law, on the other hand, are freely reviewable by this court. *See United States v. Mississippi Valley Generating Co.,* 364 U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268 (1961). While it is generally agreed that determinations of negligence and causation present mixed questions of fact and law, this court, following the prevailing view, has long held that a district judge's findings regarding negligence and causation are subject to the clearly erroneous standard. *See, e.g., Downs v. United States,* 522 F.2d 990, 999 (6th Cir.1975) (negligence); *Michael v. United States,* 338 F.2d 219, 221 (6th Cir. 1964) (causation); 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2590 (1971). A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). We are convinced that the district judge made such a mistake when he concluded that "the swine flu shot was the cause of plaintiff's rheumatoid arthritis."

The district court found the following pertinent facts. Kathleen Hasler received a swine flu inoculation on November 24, 1976. Prior to her inoculation she had enjoyed excellent health. In December, 1976, she developed adult onset of juvenile rheumatoid arthritis, known as Still's Disease. The

plaintiff also developed a rash, anemia, a heart murmur, and protein in her urine which were "symptoms other than those found in the normal case of Still's Disease." 517 F.Supp. at 1271. The rheumatoid arthritis set in within ten days of the inoculation, the normal time frame for an immunological reaction. The plaintiff suffered a typical antibody and immunological response. Every physician agreed that rheumatoid arthritis "can be related to antibody antigen reaction." *Id.*

Given these facts, to conclude that the swine flu vaccination was the cause in fact of Ms. Hasler's injuries would be mere conjecture. "As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions but not deducible from them as a reasonable inference.... On the other hand, if there is evidence which points to any theory of causation, indicating a logical sequence of cause and effect, then there is a judicial basis for such a [causal] determination." *Kaminski v. Grand Trunk W.R. Co.,* 347 Mich. 417, 422, 79 N.W.2d 899 (1956), adopting *City of Bessemer v. Clowdus,* 261 Ala. 388, 394, 74 So.2d 259 (1954); reaffirmed in *Schedlbauer v. Chris-Craft Corp.,* 381 Mich. 217, 160 N.W.2d 889 (1968).[2] The plaintiff must show that her injury was the "natural and probable result" of the defendant's actions. *Miller v. United States,* 480 F.Supp. 612, 621 (E.D.Mich.1979) (citations omitted). This she has failed to do.

In the present case, the most significant connection between the flu shot and Mrs. Hasler's rheumatoid arthritis is a temporal one. That the district court found this temporal coincidence particularly persuasive is clear: "[I]t is reasonable ... to find ... that the swine flu shot was the cause of plaintiff's rheumatoid arthritis. This is es-*pecially true in view of the temporal relationship* —the sudden onset of the disease ten days after the swine flu shot...." 517 F.Supp. at 1271 (emphasis added). The undisputed medical evidence was that an immunological reaction from an inoculation will usually occur within ten days. Nevertheless, the inoculation is not the cause of every event that occurs within the ten day period. Nearly 45 million Americans were inoculated against swine flu. It is not surprising that at least one of those 45 million persons should fall ill shortly after the shot was administered. Without more, this proximate temporal relationship will not support a finding of causation.

Another factor relied upon by the district court in finding causation was the swiftness and severity with which the condition of the plaintiff, a previously healthy individual, deteriorated. However, medical testimony established that Mrs. Hasler's case was not unique in this regard.[3] Additionally the court found that Mrs. Hasler suffered from anemia, rash, heart murmur and other symptoms not found in the "normal case" of Still's Disease. We note, however, the testimony of several physicians that Mrs. Hasler's symptoms, although not present in every case, nevertheless have been commonly associated with Still's Disease.[4]

Finally, the court relied on the fact that "rheumatoid arthritis *can* result from an antibody antigen reaction." 517 F.Supp. at 1271 (emphasis added). While an antibody antigen reaction *can cause* rheumatoid arthritis, there is no showing that it *did cause* the plaintiff's disease in this case. Moreover, the plaintiff must show that any antibody antigen reaction she may have had was a reaction *to the swine flu shot.* Many

---

**2.** Under the Federal Tort Claims Act, we apply the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b); *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). In this case, that place is Michigan.

**3.** Dr. Barbour—Vol. I p. 181; Dr. Frost—Vol. I p. 361; Dr. Sigler—Vol. I p. 390; and Dr. Slewinski—Vol. II p. 881–882.

**4.** Dr. Barbour—Vol. I p. 215, 227–229; Dr. Mc-Donald—Vol. I p. 261ff–266; Dr. Frost—Vol. I pp. 356, 357, 367; Dr. Sigler—Vol. I p. 390, 408; Dr. Cushing—Vol. I p. 492; Dr. Fernandez—Madrid Vol. I p. 501–502; and Dr. Slewinski—Vol. II, p. 874–875.

of the experts testified that there was no medical literature or evidence to support the plaintiff's theory of causation.[5] The record shows only two facts with certainty: (1) a swine flu inoculation protects an individual from flu by causing an immunological reaction; and (2) rheumatoid arthritis may be considered an auto-immune disorder. The plaintiff has failed to present any theory linking these facts to show that her immunological reaction to swine flu caused the auto-immune disease from which she suffers.

We find any causal connection between the swine flu inoculation and the plaintiff's rheumatoid arthritis merely conjectural. Although her explanation is consistent with known facts, Mrs. Hasler has not shown that her injury flows in logical sequence from the defendant's conduct. Thus, the plaintiff has not met her burden of proving causation, and the government is not liable to her or her husband for damages. It follows, moreover, that plaintiff's appeal from the judgment interest award is moot.

We add one final note. The government in its brief emphasized the fact that Mrs. Hasler's attorney was the brother of her physician, insinuating foul play. However, there was absolutely no evidence in the record to support such a charge. We consider the government's comments both inappropriate and unprofessional.

Judgment reversed.

**5.** Dr. McDonald—Vol. I p. 263–264; Dr. Frost —Vol. I p. 351; Dr. Cushing—Vol. I p. 447; and Dr. Fernandez—Madrid Vol. I p. 506.