**Martha E. FRICANO, Petitioner,**

v.

**The UNITED STATES, Respondent.**

**No. 90–23V.**

United States Claims Court.

April 2, 1991.

William H. Brennan, Syracuse, N.Y., for petitioner.

David L. Terzian, Washington, D.C., for respondent.

## OPINION

LYDON, Senior Judge:

This vaccine case is before the court on a motion for review, filed by petitioner on January 7, 1991, challenging the Special Master's decision to deny her claim for compensation. Petitioner Martha E. Fricano filed a petition for compensation under the National Vaccine Injury Compensation Program, which is part of the National Childhood Vaccine Injury Act of 1986 (Vaccine Act), 42 U.S.C. §§ 300aa–1 *et seq.* (Supp. V 1987), *as amended,* 42 U.S.C.A. §§ 300aa–1 *et seq.* (West Supp.1990). After careful consideration of the parties' submissions and oral argument, held on March 22, 1991, the court upholds the decision of the Special Master to deny compensation.

## FACTS

The facts as found by the Special Master are as follows. Petitioner Martha Fricano received a rubella vaccination on September 25, 1986, at the age of twenty-eight. On or about October 4, 1986, petitioner began to experience nonspecific aches and pains throughout her head and body. On or about October 22, 1986, petitioner's left knee became swollen and painful, so she consulted with emergency room physicians at the hospital where she worked as a secretary. On October 31, 1986, petitioner began seeing Dr. Loren Runge, a board-certified rheumatologist, for progressive soreness in her knuckles and knees. Dr. Runge noted definite swelling in both knees on that date. Petitioner continued to see Dr. Runge on a regular basis, and he continued to note some swelling in her wrists and knees through March of 1987, a period of approximately five months. On subsequent visits after that date to the present, petitioner continued to complain of discomfort in her joints, but Dr. Runge generally has not noted any visible swelling.[1]

Prior to October of 1986, petitioner was employed as a secretary, but because of her joint problems, petitioner avers that she was unable to work for over two years after her vaccination, from October of 1986 until January of 1989, when she resumed part-time secretarial work. Petitioner claims she was unable to care for her children or perform household duties during this time, so she asked her mother-in-law to assist her with these tasks.

Petitioner filed a petition for compensation under the Vaccine Act on January 8, 1990. Petitioner's past medical expenses have been covered by workers' compensation, and presumably her future expenses, if any, will be covered as well, since petitioner seeks only compensation for lost earnings during the two years following her vaccination. In addition to lost earnings, petitioner seeks compensation for pain and suffering, for a total of $30,000.

The Special Master conducted two separate evidentiary hearings, on August 31, 1990 and October 16, 1990, and filed his decision on December 6, 1990. In his decision, the Special Master determined that petitioner was not entitled to an award under the Vaccine Act because she failed to prove that the ill effects of her vaccine-caused injury lasted for more than six months, as required by section 300aa–11(c)(1)(D)(i). The Special Master noted that the expert medical witnesses for both parties agreed that petitioner's initial reaction was likely a typical case of "rubella arthritis" caused by the rubella vaccine. The medical experts disagreed, however, as to whether petitioner's continuing joint pain beyond six months after the date of the vaccination was caused by the vaccine. Petitioner's expert Dr. Runge, the treating physician, concluded that petitioner's continuing joint pain was caused by the rubella vaccine. The Special Master discounted his testimony, however, because the Special Master found Dr. Runge's conclusion to be based almost entirely on the temporal relationship between the vaccination and petitioner's continuing joint pain. The Special Master found that "there is essentially no

---

**1.** In a footnote to his decision, the Special Master indicated that there was conflicting evidence with regard to whether Dr. Runge noted some slight swelling of petitioner's joints on one or two occasions after March of 1987.

[medical] evidence that the rubella vaccine causes problems lasting longer [than a couple of months]," and he concluded that Dr. Runge's medical opinion as to the cause of petitioner's continuing joint pain was not supported by scientific studies. The Special Master agreed with respondent's medical expert, Dr. Kredich, who concluded that "there simply is no reasonable ground for identifying a cause for petitioner's ongoing pain," and that petitioner is likely suffering from "musculoskeletal pain syndrome" of unknown origin.

As a result of the Special Master's decision to deny petitioner's claim for compensation, petitioner filed on January 7, 1991, a motion for review, pursuant to Appendix J of the Rules of the United States Claims Court (RUSCC).

### I. Standard of Review

When reviewing a Special Master's decision under the Vaccine Act, as amended in 1989, the court is bound to uphold the decision below unless the court finds the decision "to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C.A. § 300aa–12(e)(2)(B); RUSCC Appendix J; *Hines v. Secretary of the Dep't of Health and Human Servs.*, 21 Cl.Ct. 634, 637 (1990). The Supreme Court has explained that under the "arbitrary and capricious" standard,

> the scope of review is a narrow one whereby a reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... The court is not empowered to substitute its judgment for that of the [decision maker]. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). The [decision maker] must articulate a "rational connection between the facts found and the choice made."

*Burlington Truck Lines v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962).

*Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974). In a later case, the Supreme Court set forth some factors that may give rise to arbitrary and capricious agency decisions:

> [A]n agency [decision] would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence ..., or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). *See also Hyundai Elecs. Indus. Co. v. United States Int'l Trade Comm'n*, 899 F.2d 1204, 1209 (Fed.Cir.1990) (touchstone of arbitrary, capricious, abuse of discretion standard of review is rationality, *i.e.*, consideration of relevant factors and absence of clear error of judgment); *Hines, supra*, 21 Cl.Ct. at 638; *Carter v. Secretary of the Dep't of Health and Human Servs.*, 21 Cl.Ct. 651, 653 (1990). With these factors in mind, the court will review the Special Master's findings of fact and conclusions of law accordingly.[2]

### II. Petitioner's Objections

Petitioner alleges the following four points of error in the Special Master's decision. First, petitioner argues that the Special Master erred in determining that petitioner's continuing symptoms after March of 1987 were not caused by the rubella vaccine, after the Special Master found that petitioner's injuries prior to March of 1987 were caused by the vaccine. Second, the Special Master erred in finding that

---

**2.** Petitioner suggests in her motion for review and at oral argument that the court conduct a *de novo* review of the record in this case, citing 42 U.S.C. § 300aa–12(d) of the Vaccine Act, and RUSCC, Appendix J. Although prior to its amendment in 1989, the Vaccine Act provided

for the court to review *de novo* a Special Master's decision, currently the Act provides for a more limited "arbitrary and capricious" standard of review, as discussed above, as does Appendix J of the RUSCC.

petitioner's evidence of causation was based only on the temporal link between the date of the vaccination and petitioner's subsequent injuries. Third, the Special Master erred in concluding that temporal association alone does not establish causation. Fourth, the Special Master erred in failing to apply the "treating physician" rule, which would accord extra weight to the testimony of petitioner's treating physician, Dr. Runge. Petitioner's first three points of error attack the Special Master's findings and conclusions with regard to causation in fact, so they will be discussed together. Petitioner's fourth point of error concerns the weight to be given expert testimony, and it will be discussed separately.

### A. *Causation in Fact of Petitioner's Post–March 1987 Condition*

The Vaccine Act provides that a petitioner is entitled to compensation for vaccine-related injuries

if the special master or court finds on the record as a whole—

(A) that the petitioner has demonstrated by a preponderance of the evidence the matters required in the petition by section 300aa–11(c)(1) of this title, and

(B) that there is not a preponderance of the evidence that the illness, disability, injury, condition, or death ... is due to factors unrelated to the administration of the vaccine described in the petition.

42 U.S.C.A. § 300aa–13(a)(1). The Act explains that, for the purpose of the preceding paragraph, the term "factors unrelated to the administration of the vaccine" does not include any "idiopathic, unexplained, unknown, hypothetical, or undocumentable cause, factor, injury, illness or condition." 42 U.S.C.A. § 300aa–13(a)(2)(A).

The Vaccine Act lists the rubella vaccine in the Vaccine Injury Table as one of the vaccines for which compensation may be paid to those persons injured by its administration. 42 U.S.C.A. § 300aa–14. The Act requires that the petitioner demonstrate, by affidavit and supporting documentation, that she "sustained, or had significantly aggravated, any illness, disability, injury, or condition" caused by the rubella vaccine, and that she "suffered the residual effects or complications of such illness, disability, injury, or condition *for more than 6 months after the administration of the vaccine* and incurred unreimbursable expenses due in whole or in part to such illness, disability, injury, or condition in an amount greater than $1,000." 42 U.S.C.A. § 300aa–11(c)(1)(C)(ii)(I), –11(c)(1)(D)(i) (emphasis added).[3]

■ Under the foregoing provisions, petitioner has the burden to demonstrate, by a preponderance of the evidence, that she suffered an injury caused by the rubella vaccine, and that the ill effects of the vaccine-caused injury lasted longer than six months. 42 U.S.C.A. § 300aa13(a)(1)(A), –11(c)(1)(C). The Special Master summarized the testimony of both parties' medical experts as follows. The medical experts for both sides agree that petitioner suffered from "rubella arthritis" caused by the rubella vaccine, from the end of October of 1986 through March of 1987, a period of five months. The experts also agree that there is no prevailing consensus of opinion within the medical community with regard to the relationship between the long-term effects of the rubella vaccine and rubella arthritis. The experts disagree, however, on the cause of petitioner's ongoing joint pain after March of 1987. Re-

---

**3.** The record indicates that, even if petitioner had been successful in proving that her post-March 1987 condition was caused by the rubella vaccine, she may have had difficulty in proving that she incurred more than $1,000 of unreimbursable expenses, since all of her medical expenses are covered by workers' compensation. At the second evidentiary hearing before the Special Master, petitioner attempted to show that she incurred more than $1,000 of unreimbursable expenses by testifying that she felt "in-

debted" to her mother-in-law for her assistance with child care and household duties, and would like, if possible, to pay her about $1,200. Because the court agrees with the Special Master's conclusion that petitioner has failed to prove causation with regard to her post-March 1987 condition, it is not necessary to resolve the issue of unreimbursable expenses. If it were necessary to consider the issue of damages, the case would have to be remanded to the Special Master for additional findings relative thereto.

spondent's expert, Dr. Kredich, testified that the continuation of petitioner's symptoms after March of 1987 is atypical of rubella arthritis, and petitioner is likely suffering from "musculoskeletal pain syndrome" of unknown origin. Dr. Runge, petitioner's treating physician, testified that the rubella vaccine is the cause of petitioner's ongoing symptoms. His conclusion, as noted by the Special Master, is based primarily on the fact that petitioner did not experience joint pain before the rubella vaccination, and on the fact that her continuing pattern of joint pain after March of 1987 directly followed the vaccination. Although petitioner denies it, her causation argument is based on a type of reasoning generally referred to as *"post hoc ergo propter hoc"* reasoning (after this, therefore on account of this), which is regarded as neither good logic nor good law. *See* Petitioner's Memorandum of Objections, at 6; *Loesch v. United States,* 227 Ct.Cl. 34, 45, 645 F.2d 905, 914 (*post hoc ergo propter hoc* approach to causation is unpersuasive), *cert. denied,* 454 U.S. 1099, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981); *Baskett v. United States,* 8 Cl.Ct. 201, 210–11 (1985), *aff'd,* 790 F.2d 93 (Fed.Cir.), *cert. denied,* 478 U.S. 1006, 106 S.Ct. 3300, 92 L.Ed.2d 714 (1986).

The Special Master found Dr. Runge's opinion on causation of petitioner's post-March 1987 symptoms to be legally insufficient because it was based almost entirely on the temporal relationship between the vaccine and petitioner's symptoms. In support of this finding, the Special Master cited three Claims Court vaccine cases and two vaccine cases from the Sixth Circuit for the proposition that causation in fact requires a logical sequence of cause and effect supported by a reputable medical or scientific explanation, and that temporal association alone is not sufficient to prove causation in fact.[4] The Special Master found that petitioner failed to present medical evidence or scientific studies to support

her view that the rubella vaccine can cause rubella arthritis or its symptoms lasting longer than six months.

The Special Master also found that, in addition to the insufficiency of the temporal association between the vaccine and petitioner's post-March 1987 symptoms to establish causation, there was little or no objective evidence of petitioner's rubella arthritis, such as swollen joints, after March of 1987. A lack of objective evidence of petitioner's symptoms after March of 1987, and a lack of medical evidence or scientific studies indicating that such symptoms can last longer than six months persuaded the Special Master that petitioner's ongoing symptoms were not caused by the rubella vaccine.

The Special Master's conclusion on causation is supported by the testimony and written report of respondent's expert, Dr. Kredich. Although Dr. Kredich is not board-certified in rheumatology, nevertheless the Special Master found her to be well-qualified as an expert in the field of rheumatology. After reviewing petitioner's medical records and conducting a comprehensive review of relevant medical literature, Dr. Kredich concluded that petitioner's ongoing symptoms were not caused by the rubella vaccine. As Dr. Kredich explained at the hearing, the term "arthritis" means actual joint swelling, and people with arthritis suffer more from joint stiffness than joint pain. Dr. Kredich observed that petitioner's post-March 1987 joint pain is more properly termed "anthralgia" rather than arthritis, since there was little objective evidence of joint swelling after March of 1987. Dr. Kredich emphasized that a person without objective symptoms of joint swelling, cannot, by definition, be suffering from arthritis. In addition, Dr. Kredich noted the lack of medical proof or consensus of opinion within the medical community that the rubella vaccine causes

**4.** *Carter v. Secretary of the Dep't of Health and Human Servs.,* 21 Cl.Ct. 651, 653 (1990) (rubella vaccine); *Strother v. Secretary of the Dep't of Health and Human Servs.,* 18 Cl.Ct. 816, 820 (1989) (measles vaccine); *Shaw v. Secretary of the Dep't of Health and Human Servs.,* 18 Cl.Ct. 646, 650–51 (1989) (measles vaccine); *Novak v. United States,* 865 F.2d 718, 724 (6th Cir.1989) (swine flu vaccine); *Hasler v. United States,* 718 F.2d 202, 205–06 (6th Cir.1983) (swine flu vaccine), *cert. denied,* 469 U.S. 817, 105 S.Ct. 84, 83 L.Ed.2d 31 (1984).

reactions lasting more than five or six months. Therefore, in Dr. Kredich's opinion, petitioner is suffering from "musculoskeletal pain syndrome" of unknown origin.

With conflicting expert opinions and scientific studies before him, the Special Master was entitled to find, as he did, that petitioner's post-March 1987 symptoms were not caused by the rubella vaccine. Since the Special Master concluded that petitioner failed to demonstrate by a preponderance of the evidence that her vaccine-related condition lasted longer than six months, he found she was not entitled to compensation under the Vaccine Act.[5] This is a case where the evidence is such that reasonable minds could differ. Petitioner's citation of conflicting testimony does not establish that the Special Master erred in the findings he made. *See Whitney Benefits, Inc. v. United States,* 926 F.2d 1169, 1177 (Fed.Cir.1991). Under the "arbitrary and capricious" standard of review, the court will not, and cannot, substitute its judgment for that of the Special Master. *See Citizens to Preserve Overton Park, supra,* 401 U.S. at 416, 91 S.Ct. at 823. Courts do not usually inject themselves in the administrative process where " 'experts may disagree [about matters involving] nice issues of judgment and choice ... which require the exercise of informed discretion.' " *Mountain States Tel. & Tel. Co. v. United States,* 204 Ct.Cl. 521, 533, 499 F.2d 611, 618 (1974) (quoting *Panama Canal Co. v. Grace Line Inc.,* 356 U.S. 309, 317, 78 S.Ct. 752, 757 (1958)); *see also Prindle v. United States,* 5 Cl.Ct. 493, 497 n. 13 (1984). On the totality of the record before it, the court does not find the Special Master's conclusion that petitioner failed to prove her post-March 1987 condi-

tion was caused by the rubella vaccine to be arbitrary, capricious, an abuse of discretion, or contrary to law.

Petitioner's second objection to the Special Master's decision is that he improperly concluded that temporal association was the only evidence to support petitioner's claim that the rubella vaccine caused her ongoing symptoms. Petitioner agrees that one of the basic reasons for Dr. Runge's conclusion on causation was the temporal association between the vaccine and petitioner's injuries. However, petitioner insists that Dr. Runge also based his conclusion on "clinical observations, and upon his knowledge of a known body of medical study which recognizes a cause and effect relationship between the rubella vaccine and the onset of post-rubella arthritis."

Dr. Runge testified that petitioner's symptoms were typical of those associated with rubella arthritis. He concluded that petitioner's post-March 1987 condition is a natural progression of the disease, citing three reasons. First, medical literature recognizes a cause and effect relationship between the administration of the rubella vaccine and the development of rubella arthritis. Second, the continuing arthritis is symmetrical in the same pattern as its onset. Third, the low degree of severity and body distribution is typical of rubella arthritis. Dr. Runge also testified that he ruled out several other causes of petitioner's condition, such as rheumatoid arthritis and systemic lupus, through blood tests. However, the Special Master found that Dr. Runge's reliance on medical evidence and scientific studies simply did not support his view. The medical evidence in the record is in conflict regarding whether the rubella vaccine can cause arthritis symptoms lasting longer than six months.[6]

---

**5.** Under the statutory scheme of the Vaccine Act, if the Special Master finds that petitioner has carried her burden of proof on causation, he must then rule out "factors unrelated to the administration of the vaccine" as a cause of the injury before deciding that petitioner is entitled to compensation. 42 U.S.C.A. § 300aa–13(a)(1)(A) & (B). Because the Special Master found that petitioner failed to prove that her ongoing symptoms were caused by the rubella vaccine, he was not required to, and did not, consider whether factors unrelated to the

vaccine may have caused petitioner's ongoing symptoms.

**6.** In recognition of the conflict in medical studies regarding the long-term effects of the rubella vaccine, the Vaccine Act requires that, to be compensable, the vaccine-related injury or illness must last longer than six months, and must be proven by a preponderance of the evidence. 42 U.S.C.A. § 300aa–13(a)(1); –11(c)(1)(C).

Moreover, the Special Master noted that Dr. Runge himself had never seen another case in which rubella arthritis persisted as long as petitioner's symptoms. Although in her brief petitioner relies on a synopsis of medical studies which petitioner claims have concluded "from both biomechanistic and epidemiologic methods that the rubella vaccine causes long term arthritis conditions," even Dr. Runge agrees that further studies are needed, and that there is a lack of consensus in the medical community with regard to the long-term effects of the rubella vaccine. As stated above, in view of the conflicting evidence as to whether petitioner's ongoing symptoms were caused by the rubella vaccine, the court will not substitute its judgment for that of the Special Master.

Petitioner's third objection to the Special Master's decision is that he erred in relying on cases that stand for the proposition that temporal association alone does not establish causation in fact. The Special Master relied on the following vaccine cases: *Strother v. Secretary of the Dep't of Health and Human Servs.*, 18 Cl.Ct. 816, 820 (1989) (measles vaccine); *Shaw v. Secretary of the Dep't of Health and Human Servs.*, 18 Cl.Ct. 646, 650–51 (1989) (measles vaccine); *Carter v. Secretary of the Dep't of Health and Human Servs.*, 21 Cl.Ct. 651, 653 (1990) (rubella vaccine); *Hasler v. United States*, 718 F.2d 202, 205–06 (6th Cir.1983) (swine flu vaccine); and *Novak v. United States*, 865 F.2d 718, 724 (6th Cir.1989) (swine flu vaccine). With regard to the Vaccine Act, the court in *Strother* explained that while

> temporal association alone established legal causation for a [Vaccine] Table injury[,] [t]emporal association of the onset of injury with the vaccination is not sufficient, however, to establish causation in fact.... Causation in fact requires proof of a logical sequence of cause and effect showing that the vaccination was the reason for the injury. A reputable medical or scientific explanation must support this logical sequence of cause and effect.

*Strother, supra*, 18 Cl.Ct. at 820 (citing *Hasler, supra*, 718 F.2d at 205–06).

Petitioner argues that two of these cases, *Shaw* and *Hasler*, are inapplicable to the present case, as they concern a measles vaccine and a swine flu vaccine respectively. The third case, *Carter*, is inapposite, argues petitioner, because the Claims Court declined to review the Special Master's dicta on whether a temporal association can support a finding of causation where all other possible causes have been eliminated. Petitioner claims that all other possible causes of her condition have been eliminated in this case, since both parties agree that petitioner "did develop rubella arthritis by cause of the rubella inoculation." Petitioner argues that the issue to be decided is "whether temporal association alone between the administration of a rubella vaccine and an ongoing arthritic condition is sufficient to prove causation where all other possibilities of causation have been excluded." By this statement, petitioner has effectively conceded that temporal association is the only evidence supporting her claim that her ongoing condition was caused by the rubella vaccine. With regard to the legal issue of causation in fact, the court finds petitioner's attempt to distinguish the Claims Court and appellate court decisions on the basis of the type of vaccine involved to be without merit. While a medical determination of causation may turn upon the type of vaccine involved, the inference to be drawn from the Claims Court's reliance on the legal causation analysis in *Hasler*, a swine flu vaccine case, for application in two measles vaccine cases, *Strother* and *Shaw*, is that a legal determination of causation in fact should not depend on the type of vaccine involved. Indeed, the court noted in *Shaw* that the "traditional causation in fact standard governs vaccine tort cases in state and federal courts outside the [Vaccine] Act." *Shaw, supra*, 18 Cl.Ct. at 650 (citing *Alvarez v. United States*, 495 F.Supp. 1188, 1206 (D.Colo.1980)).

Moreover, the record does not support petitioner's statement that all other causes of petitioner's ongoing condition have been eliminated, and the Special Master did not so find. Dr. Runge tested petitioner for

rheumatoid arthritis and lupus, and eliminated those diseases as causes of her condition. Dr. Kredich found petitioner's ongoing condition to be unrelated to the vaccine, and of unknown origin. The Special Master's reliance on case law to conclude that temporal association alone is insufficient to establish causation is reasonable and rationally based.

### B. *"Treating Physician" Rule*

■ Petitioner's fourth objection to the Special Master's decision is that he should have applied the "treating physician" rule to weigh the evidence more heavily in petitioner's favor. Petitioner describes the rule as providing that "a treating physician's opinion on the subject of medical disability ... is binding on the fact-finder unless contradicted by substantial evidence; and is entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians," citing *Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir.1986). In *Schisler*, a class action involving Social Security disability benefits, the court emphasized that "resolution of genuine conflicts between the opinion of the treating physician, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder." *Schisler, supra*, 787 F.2d at 81, 85.

Petitioner acknowledges that the "treating physician" rule originated in Social Security disability cases, but notes that it has been extended to other contexts, such as railroad retirement cases, citing *Poole v. Railroad Retirement Board*, 905 F.2d 654, 661 (2d Cir.1990). Petitioner argues that the court should follow the rule by giving greater deference to the medical opinion of petitioner's treating physician, Dr. Runge, because he has treated petitioner for over four years, and because of his "unique and impeccable qualifications." [7] Moreover, petitioner seeks to discount the testimony of Dr. Kredich by contending that "courts

generally deem the opinion of a non-examining doctor insufficient to override the treating physician's diagnosis," citing, *inter alia, McLean Hospital Corp. v. United States*, 18 Cl.Ct. 152, 156 (1989). In *McLean Hospital*, although the court stated that "it may be true that courts generally deem the opinion of a non-examining doctor insufficient to override the treating physician's diagnosis," the court rejected plaintiff's argument that "the opinion of a non-examining doctor, standing alone, cannot constitute substantial evidence sufficient to overcome the contrary diagnosis of a treating physician." *McLean Hospital, supra*, 18 Cl.Ct. at 156.

All of the cases petitioner cites in support of the "treating physician" rule, except *Poole* and *McLean Hospital*, are Social Security disability cases, and they all recognize that the treating physician's testimony may be contradicted by substantial evidence. *See Schisler, supra*, 787 F.2d at 81, 85; *Havas v. Bowen*, 804 F.2d 783, 786 (2d Cir.1986); *Bluvband v. Heckler*, 730 F.2d 886, 893 (2d Cir.1984); *Martin v. Secretary of Dep't of Health, Education & Welfare*, 492 F.2d 905, 908 (4th Cir.1974). Despite petitioner's concerted efforts to persuade the court that a "close temporal relationship between the vaccination and the onset of symptoms, when coupled with a reasoned opinion of a treating physician" is sufficient to establish causation of petitioner's post-March 1987 condition, petitioner cannot escape the fact that the Special Master found Dr. Runge's testimony to be less persuasive than, and in part contradicted by, the testimony of Dr. Kredich. Petitioner's reliance on cases such as *Unthank v. United States*, 533 F.Supp. 703, 710 (D. Utah 1982), aff'd, 732 F.2d 1517 (10th Cir. 1984), to support her position is, therefore, unavailing.

The Special Master, in weighing the testimony of both parties' physicians, acknowledged the fact that Dr. Runge is board-certified in rheumatology, and has been petitioner's treating physician since a month after the onset of her condition. Neverthe-

---

7. It is to be noted that Dr. Runge began treating petitioner on October 31, 1986, over a month after she had received her rubella vaccination. It would appear he never treated her prior to October 31, 1986.

less, the Special Master found Dr. Runge's opinion on the cause of petitioner's post-March 1987 condition to be contradicted by the opinion of respondent's expert Dr. Kredich. It has been noted that "[e]ven uncontradicted opinion testimony is not conclusive if it is intrinsically nonpersuasive." *Sternberger v. United States*, 185 Ct.Cl. 528, 535–36, 401 F.2d 1012, 1016–17 (1968); *Hines, supra*, 21 Cl.Ct. at 642. Moreover, the Special Master presided over the evidentiary hearings, and he is entitled to decide how much weight to give expert testimony. His decision in this regard is entitled to substantial deference from the court. *Hines, supra*, 21 Cl.Ct. at 642; *Exxon Corp. v. United States*, 19 Cl.Ct. 755, 761 (1990). As stated above, the court will not substitute its judgment for that of the Special Master when, as here, his decision is reasonable and rationally based on the totality of the record before him.[8]

### CONCLUSION

For the foregoing reasons, the court upholds the decision of the Special Master to deny compensation to petitioner Martha E. Fricano. The Clerk is directed to dismiss the petition and to enter judgment accordingly. No costs.

---

**8.** At oral argument, though not in its briefs, respondent raised, as a defense, a jurisdictional question with regard to whether petitioner's receipt of workers' compensation payments, relative to the condition for which petitioner has brought suit under the Vaccine Act, is grounds for rendering petitioner ineligible for participation in the Vaccine Program. *See* 42 U.S. C.A. § 300aa–11(c)(1)(E) (petitioner may not have collected an award or settlement of a civil action for damages for vaccine-related injury); *see also Massing v. Secretary of the Dep't of Health and Human Servs.*, 926 F.2d 1133 (Fed. Cir. precedential opinion issued Feb. 21, 1991); *Wiggins v. Secretary of the Dep't of Health and Human Servs.*, 17 Cl.Ct. 551 (1989), *aff'd*, 898 F.2d 1572 (Fed.Cir.1990). However, as this defense was not raised before oral argument, and the court's decision disposes of the petition on the merits, consideration of the issue at this point in the proceedings would necessitate further briefing and would impinge on the statutory time constraints under which the court labors.