Celeste HOPKINS, Petitioner,

v.

**SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 02–1973V.

United States Court of Federal Claims.

Sept. 14, 2004.

Lorraine J. Mansfield, Mansfield Law Offices, Las Vegas, NV, for plaintiff.

Gabrielle M. Fielding and David L. Terzian, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

## OPINION

HODGES, Judge.

Celeste Hopkins experienced multiple occurrences of syncope (fainting) within a short period of time after receiving a diphtheria/tetanus vaccination. She was admitted to an emergency room the day after her vaccination, and she was treated by the insertion of a pacemaker to regulate her heart. She contends that a tetanus vaccination caused her to have a heart condition that resulted in the fainting spells. Ms. Hopkins brought this action under the National Vaccine Injury Compensation Program. 42 U.S.C. § 300aa–10. The Special Master denied Ms. Hopkins compensation, and petitioner appeals that decision.

Ms. Hopkins suffers from a condition described as vasopressor syncope, which is a sudden loss of consciousness related to a heart condition. In this case, the heart ailment is bradycardia, which describes unusually slow or unsteady heartbeats. The Special Master ruled that petitioner did not show that the tetanus vaccine caused her condition. At most, the relationship between the vaccine and the fainting spells was temporal. Petitioner alleges that the Special Master's decision was arbitrary, capricious, an abuse of discretion, and not in accordance with the law. *See* 42 U.S.C. § 300aa-12(e)(2)(B). According to petitioner, the Special Master erred in (1) giving little weight to the opinion of petitioner's expert, (2) giving undue weight to the opinion of respondent's expert, and (3) giving insufficient weight to the opinions of petitioner's treating physicians. We affirm the Special Master's ruling.

## SUMMARY OF THE CASE

Celeste Hopkins received a tetanus vaccination at 2:00 p.m. on April 9, 2002. Her husband found her unconscious on the bathroom floor at 6:30 a.m. the next morning, sixteen hours after her vaccination. She reported three more episodes of syncope that

day and was admitted to the Boulder City Hospital Emergency Room. Dr. Alan Steljes diagnosed Ms. Hopkins with recurrent syncope secondary to bradycardia and implanted a pacemaker. The cause of origin of the fainting likely was "a profound vasovagal effect," but it was not clear what triggered the spells. A vasovagal effect describes low or irregular heartbeat or blood pressure sufficient to deprive the brain of oxygen. Dr. Steljes did not see a relationship between petitioner's episodes of syncope and the vaccination that she had received the previous day.

Dr. Steljes treated Ms. Hopkins during 2003. She also was treated by Doctors Joanne Leovy and Joseph Johnson, family practitioners; Randall Moody, a neurologist; and Lindley Avina, a cardiologist. None of these physicians provided a basis for supposing that petitioner's syncope was connected to the vaccine causally. Dr. Leovy stated that anaphylaxis or an anaphylactic-type reaction to the vaccine was a likely explanation, but she offered no basis for this opinion other than stating that she could see no other cause. Dr. Johnson stated he had a "gut feeling" that the episodes were related to the vaccination, but cited no basis for this assertion other than the temporal relationship between the two events. Dr. Moody thought that Ms. Hopkins appeared to have an untoward reaction to the vaccine, but he offered no basis for this view. The cardiologist, Dr. Avina, also stated that the relation between the vaccine and the fainting episodes appeared to be temporal only. Experts for both sides agreed that it would be rare for an episode of syncope to occur as a result of a vaccination received more than twelve hours earlier. Syncopal episodes typically occur soon after the vaccine is administered.

Dr. Kasper was the Government's expert. He disagreed with Dr. Leovy's view that anaphylaxis or an anaphylactic-type reaction to the vaccine was a likely explanation for the fainting episodes. He stated that petitioner did not have symptoms consistent with anaphylaxis. Dr. Kasper opined that Ms. Hopkins had a vasovagal effect that was consistent with her lifelong history of similar, milder episodes beginning in childhood. Her remaining medical problems were consistent with anxiety or panic disorder, according to Dr. Kasper.

The Special Master weighed expert opinions offered by both parties and reviewed the record carefully. She concluded that Ms. Hopkins did not establish a *prima facie* case that the vaccination caused her syncope as required by the Vaccine Act. 42 U.S.C. § 300aa–13(a)(1)(A), 300aa–11(c)(1), 300aa–14. Petitioner appealed to this court on June 21, 2004 and submitted exceptions on July 30, 2004, in accordance with Vaccine Rule 24 in response to an Order of this court.

## BURDEN OF PROOF UNDER THE VACCINE ACT

Congress created the National Vaccine Injury Compensation Program as a no-fault system for individuals who have suffered injuries thought to be caused by vaccines. 42 U.S.C. § 300aa–10. Two methods of proof exist under the Vaccine Act. If petitioner can show by a preponderance of the evidence that an injury specified in the Vaccine Injury Table occurred within the requisite period of time, it is presumed that the vaccine caused the injury. 42 U.S.C. § 300aa–14. The Special Master may deny compensation only if respondent shows by a preponderance of the evidence that a specific factor other than the vaccine caused the injury. 42 U.S.C. § 300aa–13(a)(1). If the injury did not occur within the time required by the Vaccine Table, or if the injury does not appear in the Table, petitioner must prove causation-in-fact or actual causation. 42 U.S.C. § 300aa–11. The injury claimed here does not fall within the Table-specified requisite period of time.[1]

---

1. Petitioner alleged two Table injuries, anaphylaxis and brachial neuritis. No physician opined that petitioner has or had brachial neuritis, and such an injury is not suggested anywhere in the record. The Special Master dismissed petitioner's allegation of brachial neuritis for failure to present evidence that this injury occurred. Petition-er has not challenged that dismissal on appeal. The requisite period of time in the Table for anaphylaxis is four hours after vaccination. 42 C.F.R. § 100.3(a)(1). The record does not show that petitioner exhibited symptoms of anaphylaxis until more than sixteen hours after she received the vaccination.

## ANALYSIS

Petitioner's arguments on appeal relate to the weight the Special Master accorded the opinions of various experts. Essentially, petitioner argues that the Special Master erred by improperly relying on certain experts while not giving due weight to other experts. A special master's decision cannot be set aside unless the decision is arbitrary and capricious, an abuse of discretion, or otherwise contrary to law. 42 U.S.C. § 300aa–12(e)(2)(B). We consider petitioner's arguments on appeal under this limited scope of review.

■ A special master is not bound by the opinions offered by expert witnesses. 42 U.S.C. § 300aa–13(b)(1) (Any "diagnosis, conclusion, judgment, test result, report or summary shall not be binding on the special master or court."). A special master need only provide a rational explanation for relying on a particular expert. *Summar v. Sec'y of Dep't of Health & Human Servs.*, 24 Cl.Ct. 440, 444–45 (1991); *see also Mills v. Sec'y of Dep't of Health & Human Servs.*, 27 Fed.Cl. 573, 578 (1993) (holding that a special master may reject expert testimony if the special master finds another expert to be more persuasive).

■ Petitioner's motion for review states that it was error for the Special Master to dismiss petitioner's allegation that the vaccine caused her vasovagal episode. Petitioner argues that the Special Master failed to give due weight to the opinion of petitioner's expert neurologist, Dr. Moody. Ms. Hopkins essentially argues that the Special Master's finding was arbitrary and capricious because she considered petitioner's vasovagal episode to be a cardiological event. For that reason, she gave more weight to the opinions of cardiologists than the opinion of petitioner's neurologist. Petitioner asserts that the statute does not require the opinion of a cardiologist but only a medical opinion. Moreover, petitioner maintains that the injury occurred to the nerves around her heart and this is a "neurology area." Dr. Moody was petitioner's neurologist, however, and he told Ms. Hopkins that he could not detect a problem with her nervous system. While Dr. Moody testified to a connection between petitioner's

symptoms and her vaccination, he offered no basis for such a conclusion. Expert opinion requires "more than subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Petitioner asserts that the Special Master gave too much weight to the opinion of respondent's cardiologist because he did not evaluate petitioner personally. He formed his opinion solely on the basis of her medical records. She argues that the Special Master gave insufficient weight to the opinions of petitioner's own medical providers. As noted above, however, medical judgment is not binding. A treating physician's testimony may be contradicted by substantial evidence. *See Fricano v. United States*, 22 Cl.Ct. 796, 803 (1991). "[E]ven uncontradicted testimony is not conclusive it if is intrinsically nonpersuasive." *Id.* at 804 (quoting *Sternberger v. United States*, 185 Ct.Cl. 528, 535–36, 401 F.2d 1012 (1968)). The opinions of three of petitioner's treating physicians supported her allegations. The opinions of three other physicians opposed her allegations. A special master has statutory authority under the Vaccine Act to reject diagnoses or conclusions contained in the record. 42 U.S.C. § 300aa–13(b). The Special Master articulated sound reasoning for rejecting petitioner's medical experts. Petitioner alleged a cardiological problem. None of the physicians who opined that the vaccine caused Ms. Hopkins' vasovagal episode was a cardiologist; all three who opposed such a conclusion were.

The Special Master provided an adequate explanation for why she relied on the Government's witness. Petitioner established only a temporal relationship between her vaccination and the fainting episodes the next day. Respondent's expert stated that "10 to 12 hours between vaccination and syncope is too long for there to be a causative relationship." As stated above, Petitioner's cardiologists did not opine that the vaccine probably caused the syncope. Respondent's expert is a physician whose credentials place him in the "upper echelons of cardiology." He testified that the vaccine likely did not cause the syncope. We did not find from the record

that petitioner's efforts to impeach the Government's expert were persuasive. In any event, the Special Master found that his testimony was the more credible.

Questions regarding the weight accorded to medical opinions fall within the discretion of the Special Master. Her role was to weigh the opinions and the evidence and draw reasonable inferences from them. We may not substitute our judgment for that of the Special Master. *Johnson v. Sec'y of Dep't of Health & Human Servs.,* 33 Fed.Cl. 712, 725–26 (1995), aff'd, 99 F.3d 1160 (Fed. Cir.1996). The Special Master's findings cannot be considered arbitrary and capricious given her broad discretion in this area and the reasonable basis she articulated for making her determinations. The Special Master's ruling reflected properly the expert opinions and other evidence in the record.

### CONCLUSION

The Special Master has broad discretion under the Vaccine Act to make the medical judgments that she made in this case. The petitioner has not given this court reason to set aside the Special Master's decision. That decision is AFFIRMED.