Colleen THIBAUDEAU, as Conservator of Constance J. Thibaudeau, Petitioner,

v.

SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

No. 90–888V.

United States Claims Court.

Oct. 23, 1991.

James M. Regnier, Missoula, Mont., for petitioner.

Mary Hampton Mason, Washington, D.C., with whom was Asst. Atty. Gen., Stuart M. Gerson, for respondent.

NETTESHEIM, Judge.

This case is before the court on petitioner's motion for review of a special master's dismissal of her petition for compensation brought under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C.

§§ 300aa–1—300aa–34 (1988), *as amended* by several public laws codified in 42 U.S.C.A. §§ 300aa–1—300aa–34 (1991) (the "Vaccine Act" or the "Act"). The issue for decision is whether the special master permissibly rejected petitioner's expert opinion. Argument is deemed unnecessary.

## FACTS

The medical records for much of the period at issue are unavailable. The following facts are those asserted in the affidavit submitted by petitioner. Constance J. Thibaudeau was born on February 10, 1958, at St. Patrick Hospital, Missoula, Montana, to Colleen Thibaudeau ("petitioner") and John Thibaudeau. Petitioner experienced no unusual symptoms during her pregnancy or during Constance's birth. On March 11, 1958, at the age of one month, Constance was taken to Dr. G.H. Barmeyer for her first physical examination. Dr. Barmeyer pronounced Constance a healthy baby. Constance experienced no untoward effects after her first and second vaccinations. Constance received her third vaccination, an inactivated polio vaccine, on March 13, 1959. On the morning of March 14, 1959, Constance appeared to be in shock and was taken to St. Patrick Hospital. Dr. Hal Schwartz examined Constance and recommended that petitioner keep her in the hospital overnight for observation. During what became a 17–day hospitalization, Constance experienced severe convulsions and lapsed into a coma for several days. These occurrences resulted in partial paralysis of her right side for a period of time. Constance was diagnosed as having encephalitis after various tests were conducted at the hospital. Constance had to re-learn various skills, such as walking alone and drinking from a cup, upon her release from the hospital.

Constance resumed having seizures at the age of two following a move to Deer Lodge, Montana. A doctor in Deer Lodge prescribed phenobarbital to control the seizures. Constance has taken this medication from that time forward. Constance began attending a speech clinic in 1961 and was enrolled in kindergarten in Helena, Montana, in 1963. The next year Constance moved up to the first grade, but was held back twice without passing. From testing within the school system, it was determined that Constance was mentally retarded. In 1966 Constance started special education classes. She eventually graduated from high school in Great Falls, Montana, where she is currently employed part-time at a yogurt store. However, Constance's seizures and retardation necessitate continual custodial care by her parents.

Both parties' medical experts testified during a telephone hearing held on August 8, 1991. Special Master Denis J. Hauptly issued his decision, remarkable both for its brevity and lack of discussion of the Vaccine Act, on August 19, 1991, as amended on August 22, 1991, finding that petitioner had failed to meet her burden of proof and dismissing the action. *Thibaudeau v. Secretary of HHS*, No. 90–888V, 1991 WL 172256 (Cl.Ct.Spec.Mstr. Aug. 19, 1991). Specifically, the special master found that petitioner's expert's conclusion that the polio "vaccine caused an immune system reaction, essentially an allergic reaction, which in turn led to an encephalopathic reaction," *Thibaudeau*, slip op. at 2, was based on the temporal relationship of the administration of the vaccine and the onset of symptoms. The special master noted that the expert "admitted that the type of encephalitis seen in this case most commonly would be caused by herpes virus." *Id.* The special master concluded that the expert's theory was "speculative at best," *id.*, given the lack of contemporaneous medical evidence.

Petitioner filed her motion for review in the Claims Court on September 11, 1991, contending that the special master disregarded her expert testimony solely on the basis that the expert relied on the temporal relationship of the symptoms and the administration of the vaccine.

## DISCUSSION

1. *Standard of review*

On review of a decision by a special master, the Claims Court is authorized to

"set aside any findings of fact or conclusion[s] of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law." 42 U.S.C.A. § 300aa–12(e)(2)(B). The Federal Circuit recently affirmed that "this standard of review applies to all cases filed after the effective date of the [1989] amendment ...," *Hines v. Secretary of HHS*, 940 F.2d 1518, 1523 (Fed.Cir.1991), including the case at bar. The issue of whether the evidence of record warrants a conclusion that a vaccine caused an injury calls for review under the arbitrary and capricious standard. *Id.* at 1527. According to the Federal Circuit, " '[A]rbitrary and capricious' is a highly deferential standard of review....." *Id.* at 1528.

The Supreme Court, in the context of reviewing a federal agency's decision under the Administrative Procedure Act, 5 U.S.C. § 706 (1988), explained that under the arbitrary and capricious standard a reviewing court must consider "whether the [federal agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971) (citing cases) (quoted in *Hines*, 940 F.2d at 1527). "Although ... [the] inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one....." *Citizens To Preserve Overton Park*, 401 U.S. at 416, 91 S.Ct. at 824; *see also Hyundai Elecs. Indus. Co. v. ITC*, 899 F.2d 1204, 1209 (Fed. Cir.1990) (the "touchstone" of arbitrary, capricious, and abuse of discretion standard of review is rationality—consideration of all relevant factors absent a clear error of judgment). In *Hines* the Federal Circuit charted the course for a special master's decision under the arbitrary and capricious standard: It must 1) consider the relevant evidence in the record as a whole; 2) draw plausible inferences from the evidence; and 3) articulate a basis for decision that is rational. *Hines*, 940 F.2d at 1528.

### 2. *Rejection of petitioner's medical expert testimony*

The special master's decision does not rely on respondent's expert testimony, nor does it imply any weight assigned to credibility. The special master ruled against petitioner on the ground that she failed to meet her burden of proof.* In these circumstances respondent fairly cannot fault petitioner for confining her argument to the probativeness of her expert and for not addressing the substantial testimony of respondent's medical expert. Thus, respondent does not overcome petitioner's objections by arguing that its expert was the more persuasive. The Act allows the Claims Court to issue its own findings only after setting aside those of the special master. Consequently, the court first must assess whether the special master's findings and conclusions are arbitrary and capricious under the Act before undertaking to make findings of its own.

The Act stipulates the quantum of proof required to establish liability for an injury caused by the administration of a vaccine. Section 300aa–13(a) of the Vaccine Act sets forth as a "[g]eneral rule":

(1) Compensation shall be awarded under the Program to a petitioner if the special master or court finds on the record as a whole—

(A) that the petitioner has demonstrated by a preponderance of the evidence the matters required in the petition by section 300aa–11(c)(1) of this title [section 300aa–11(c)(1)(C)(ii)(I) includes injuries caused by a polio vaccine that are not listed in the Vaccine Injury Table], and

(B) that there is not a preponderance of the evidence that the illness, disability, injury, condition, or death described

---

* The special master concluded:

The respondent's expert proposed herpes encephalitis as an alternative cause. The case for such a cause was very strong. Nonetheless, given my conclusion that petitioner has failed to meet ... [her] burden of proof as to an on-table or an off-table case, I do not need to determine this issue.

*Thibaudeau,* slip op. at 3.

in the petition is due to factors unrelated to the administration of the vaccine described in the petition.

The special master or court may not make such a finding based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion. Section 300aa–13(b) requires the special master to consider "in addition to all other relevant medical and scientific evidence contained in the record" "any diagnosis" or "medical judgment" contained in the record regarding causation. However, subsection (b)(1) further instructs: "Any such diagnosis ... [or] judgment ... shall not be binding on the special master...." This standard encapsulates the rule of case law that an expert opinion, even uncontroverted, is not binding on the trier of fact. "[The judgments] of an expert can be no better than the soundness of the reasons that stand in support of them." *Fehrs v. United States*, 223 Ct.Cl. 488, 508, 620 F.2d 255, 265 (1980). " '[I]t is axiomatic that the trier of fact is not bound to accept expert opinion, even if it is uncontradicted.' " *Del Mar Avionics, Inc. v. Quinton Instr. Co.*, 836 F.2d 1320, 1325 (Fed.Cir.1987) (quoting *Minnesota Mining & Mfg. Co. v. Berwick Indus. Inc.*, 532 F.2d 330, 333 (3d Cir. 1976)); *see Sternberger v. United States*, 185 Ct.Cl. 528, 535–36, 401 F.2d 1012, 1016–17 (1968) ("Even uncontradicted opinion testimony is not conclusive if it is intrinsically nonpersuasive.").

■ Congress envisaged that a petitioner prove that a vaccine in fact caused the type of injury that petitioner claims. 42 U.S.C. § 300aa–11(c)(1)(C)(ii)(I); *Hines*, 940 F.2d at 1525. The Federal Circuit adopted the formulation of the causation requirement that causation in fact requires proof of a logical sequence of cause and effect showing that the vaccination was the reason for the injury. *Id.* Cause and effect should be established by a reputable medical or scientific explanation. *See Richardson v. Richardson–Merrell, Inc.*, 857 F.2d 823, 829 (D.C.Cir.1988), *cert. denied*, 493 U.S. 882, 110 S.Ct. 218, 107 L.Ed.2d 171 (1989). A temporal relationship between the onset of injury and administration of the vaccine has been held insufficient to establish causation in fact. *Hasler v. United States*, 718 F.2d 202, 205–06 (6th Cir. 1983), *cert. denied*, 469 U.S. 817, 105 S.Ct. 84, 83 L.Ed.2d 31 (1984).

■ Petitioner's medical expert, Dr. Richard A. Nelson, a board certified neurologist, gave his opinion, within a reasonable degree of medical certainty, that a causal relationship existed between the inactivated polio vaccine administered to Constance on March 13, 1959, and her medical condition on March 14, 1959. He considered Constance's reaction, as described in petitioner's affidavit, to be "a post vaccinial reaction," "sort of an immune-type reaction to the injection," *Thibaudeau*, Transcript of Proceedings, Aug. 8, 1991, at 8 [hereinafter "Tr."], or, more specifically, an "encephalitic type reaction." Tr. at 12. He characterized the incidence of a post-vaccinial reaction in the following manner: "extremely rare," Tr. at 8; "very rare," *id.* at 9; "[I]t's an extremely rare shot, but what else do we have to explain this with...." *id.*; and "[W]hile it's a statistical rare shot, I think that's what happened...." *Id.* Dr. Nelson agreed with respondent's counsel that in instances where a cause of sporadic encephalitis can be isolated, herpes is the most common cause. Finally, Dr. Nelson characterized the temporal relationship as "key," Tr. at 22, to his opinion. In support of his opinion of the reaction and its rarity, Dr. Nelson cited an article in *The Scientific American* concerning polio vaccines. The article noted that there were 44 cases of post-vaccinial paralytic encephalitic reactions from 1969 through 1976. However, Dr. Nelson did not know whether the encephalitis suffered by Constance was a vaccine-associated paralysis disease, or whether any of the 44 cases involved an inactivated vaccine.

Given this evidence of record, some of which was not addressed in his opinion, the special master found, as follows:

The doctor admitted that the type of encephalitis seen in this case most commonly would be caused by herpes virus. He testified that his conclusion that some element in the vaccine led to the reaction,

depended on the temporal relation. Such a relationship is insufficient to establish causation in fact.... Where there is no specific contemporaneous medical evidence in this case supporting the correlation, the theory is speculative at best, depending on assumptions without clinical support or laboratory findings. Such omissions are inevitable, given the passage of time, but the inevitability of evidentiary losses does not allow me to find compensation without adequate evidence.

*Thibaudeau*, slip op. at 2–3 (citations omitted). This finding is not arbitrary or capricious. The failure of petitioner's proof was its singular reliance on the temporal relationship between the administration of the vaccine and the onset of symptoms. The special master cited this fact, among others. His decision was sufficient.

Respondent includes a boilerplate paragraph, reprinted in all its briefs filed in Vaccine Act cases, to the effect that petitioner's request for review is ill founded since Congress contemplated that review in the Claims Court would be the exception. Regrettably, it has become the rule. In this case petitioner justifiably may have been emboldened by the summary nature of the special master's decision. Attention to available case law, however, should have cautioned restraint. Moreover, petitioner's counsel had to be aware that if the court were to issue its own findings, the court could only find that the minimal vitality of Dr. Nelson's testimony was extinguished after respondent's expert testified.

## CONCLUSION

Accordingly, based on the foregoing, the decision of the special master is sustained and the Clerk of the Court shall enter judgment dismissing the petition.

No costs on review.