Janet **VAN EPPS**, Petitioner,

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–1111V.

United States Claims Court.

Aug. 4, 1992.

---

Nerino J. Petro, Jr., Rockford, Ill., for petitioner.

Caroline F. Gosse, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for respondent.

## ORDER

NETTESHEIM, Judge.

This matter is before the court on petitioner's motion for review of an order denying compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–1–300aa–34 (1988), *as amended* by several public laws, codified in 42 U.S.C.A. §§ 300aa–1–300aa–34 (West Supp. 1992) (the "Vaccine Act"). Petitioner contends that the special master held her to a burden of proof greater than a preponderance of the evidence and failed to give appropriate weight to the testimony and written reports of her expert. Argument is deemed unnecessary.

## FACTS

The following facts are those contained in the medical records, affidavit of petitioner, and the transcript of hearing. Janet Van Epps ("petitioner") was born on March 21, 1964, in Rockford, Illinois, at Rockford Memorial Hospital to Herbert and Grace Epps. Petitioner's birth was considered normal with no complications prior to or

subsequent to delivery. In December 1967, while running a high temperature, petitioner experienced febrile convulsions and was taken to the family doctor. These convulsions were deemed normal and harmless in a child of petitioner's age with her temperature. On August 3, 1971, petitioner received a mandatory mumps virus vaccination from Dr. Harry Darland. Petitioner claims that within 15 days of receiving the mumps vaccine, she began to experience itching on the right-side of her body and, as time progressed, garbled speech and convulsions. She began to see a number of neurologists who determined that she was brain-damaged, but could not specify the source of her condition. Petitioner continued to have seizures throughout her childhood.

Between September 1, 1971, and August 14, 1972, petitioner was examined by both Drs. John L. Bender and Darland and was placed on the following medications: Belladonna, Phenobarbital, Dilantin, and Mysoline. Since August 1972 petitioner has been seen by physicians at the University Hospital Center for Health Signs and the University of Wisconsin Department of Neurology and Pediatrics. Petitioner has undergone considerable treatment and examinations. Over the years these examinations have revealed the increasing severity of her injury, the more frequent occurrence of her seizures, and the increasingly stronger medications necessary to control them. In 1982 petitioner entered the Mayo Clinic in Rochester, Minnesota, for further neurological examinations at which time an abnormality was discovered in the left hemisphere of her brain. She was later operated on and had tissue, believed to be a source of her epileptic-like seizures, removed. However, her seizures did not stop.

Today, petitioner is a 28–year old woman with severe medical problems. She suffers from a residual seizure disorder and sizable health bills. Her parents play a significant role in her care. On September 20, 1990, petitioner filed for compensation under the Vaccine Injury Compensation Program established by the Vaccine Act, alleging that her residual seizure disorder was directly caused by the mumps vaccination administered to her on August 3, 1971.

Both parties' medical experts testified at a hearing held on January 21, 1992. Dr. Frank R. Sharbrough, a certified pediatric neurologist, specializing in electroencephalography appeared for petitioner; Dr. Michael H. Kohrman, a certified neurologist also with the same specialty testified for respondent. The special master also heard from petitioner's parents. Special Master E. LaVon French entered a decision denying compensation. *Van Epps v. Secretary of HHS*, No. 90–1111V, 1992 WL 88014 (Cl.Ct.Spec.Mstr. Apr. 13, 1992). The special master found that petitioner failed to prove that her seizures fell within the bounds of a Table Injury, since proof by medical records or witnesses was lacking that petitioner suffered the onset of a residual seizure disorder within the required 15 days of receiving the mumps vaccination. Therefore, the special master concluded that she did not qualify to receive compensation for a Table Injury with respect to which causation need not be proved. The special master deemed the testimony of petitioner's expert, Dr. Sharbrough, insufficient to establish causation in fact by a preponderance of evidence. Although Dr. Sharbrough deemed the likelihood of petitioner's allegation that the mumps vaccine initiated the onset of seizures as "highly possible," this testimony, in conjunction with his other evidence, did not establish causation by a preponderance of evidence, according to the special master.

## DISCUSSION

■ On review of a decision by a special master, the Claims Court is authorized to "set aside any findings of fact or conclusion[s] of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law." 42 U.S.C.A. § 300aa–12(e)(2)(B). The issue of whether the evidence of record warrants a conclusion that a vaccine caused an injury calls for review under the arbitrary and capri-

cious standard. *Hines v. Secretary of HHS*, 940 F.2d 1518, 1527 (Fed.Cir.1991). *See generally Munn v. Secretary of HHS*, 970 F.2d 863, 869 (Fed.Cir.1992). This standard of review is "highly deferential to the factual findings of the special master." *Munn, id.* Indeed, the *Munn* opinion characterizes the standard as "the most deferential possible." *Id.* at 870.

The Supreme Court, in the context of reviewing a federal agency's decision under the Administrative Procedure Act, 5 U.S.C. § 706 (1988), explained that under the arbitrary and capricious standard a reviewing court must consider "whether the [federal agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971) (citing cases) (quoted in *Hines*, 940 F.2d at 1527). "Although ... [the] inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one...." *Id.; see also Hyundai Elecs. Indus. Co. v. ITC*, 899 F.2d 1204, 1209 (Fed.Cir.1990) (the "touchstone" of arbitrary, capricious, and abuse of discretion standard of review is rationality—consideration of all relevant factors absent a clear error of judgment). In applying the arbitrary and capricious standard, a special master must 1) consider the relevant evidence in the record as a whole; 2) draw plausible inferences from the evidence; and 3) articulate a basis for the decision that is rational. *Thibaudeau v. Secretary of HHS*, 24 Cl.Ct. 400, 402 (1991) (citing *Hines*, 940 F.2d at 1528).

■ Petitioner seeks review of the special master's finding that causation was not established. In attempting to set aside this finding, petitioner must demonstrate that it was arbitrary or capricious and/or was not in accordance with the law. Only two circumstances entitle the petitioner to compensation under the Vaccine Act: that she sustained an injury or condition set forth in the Vaccine Injury Table within the set time frame or that the stated vaccine was in fact responsible for her condition. *Strother v. Secretary of HHS*, 18 Cl.Ct.

816, 818 (1989), *decision foll. remand*, 21 Cl.Ct. 365, 370–73 (1990), *aff'd*, 950 F.2d 731 (Fed.Cir.1991). Although petitioner sought to prove a Table Injury, she does not challenge the special master's ruling on review.

■ Proof that petitioner's seizure disorder was caused in fact by the mumps vaccination, and not some other agent, must be by a preponderance of the evidence. *Munn*, at 865. The Federal Circuit adopted the formulation of the causation requirement that causation in fact requires proof of a logical sequence of cause and effect showing that the vaccination was the reason for the injury. *Hines*, 940 F.2d at 1525. Cause and effect should be established by a reputable medical or scientific explanation. *See Richardson v. Richardson–Merrell, Inc.*, 857 F.2d 823, 829 (D.C.Cir.1988), *cert. denied*, 493 U.S. 882, 110 S.Ct. 218, 107 L.Ed.2d 171 (1989).

■ Petitioner argues that she proved causation in fact by a preponderance of the evidence because Illinois law recognizes testimony as to medical possibility, rather than probability, as satisfactory proof. However, in advocating that the applicable law is that of the state in which the injury occurred, petitioner operates under the mistaken assumption that Illinois state law governs decisions under the Vaccine Act. The Vaccine Injury Compensation Program is a federal program, operated within a federal court by administrative fact finders. The controlling precedents to date apply exclusively federal law developed under the Administrative Procedure Act and the Vaccine Act. Unlike the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (1988), for example, the Vaccine Act does not incorporate state law standards. Therefore, the court rules that the Vaccine Act does not attribute state law to petitioner's evidentiary burden under the Program.

■ The special master applied the preponderance of evidence standard in evaluating the testimony of petitioner's expert. The special master found that "there is insufficient medical testimony to support a finding of causation." *Van Epps*, slip op. at 9. Petitioner argues that inadequate

weight was given to the testimony of her expert witness, Dr. Sharbrough. She construes the decision of the special master as necessitating that causation be established with absolute medical certainty, rather than relying on a preponderance of evidence.

The special master's decision analyzed in detail the testimony of petitioner's expert. On four of the six occasions when Dr. Sharbrough was asked for his opinion as to whether petitioner's seizure disorder was caused by the mumps vaccine, he answered in such qualified terms as "might" or "could have been." The firmest testimony offered by Dr. Sharbrough followed a question by petitioner:

> ... Doctor, have any of the questions asked of you by the ... [special master] or by Respondent's attorney, altered your opinion that ... to a reasonable degree of medical certainty, that there's a causal connection between this vaccination and ... [petitioner's] present condition?

To which he replied, "No." Transcript of Proceedings, *Van Epps*, No. 90–1111V, at 113–14 (Cl.Ct.Spec.Mstr. Jan. 21, 1992).

Dr. Sharbrough's consistently equivocal testimony that the mumps vaccine was a "possible" cause or "could" be a cause of petitioner's seizure disorder did not rise to the level of a reasonable degree of medical certainty. In fact, not one neurologist has pinpointed petitioner's etiology to the mumps vaccine. Most of her physicians have refuted the idea. Dr. Sharbrough admitted that no medical literature or stud-

ies prove that the mumps vaccine indeed can cause a seizure disorder. His records note that petitioner's seizures are in association with her structural abnormality. Thus, Dr. Sharbrough has implied the probability of petitioner's etiology to be associated with her seizure disorder. Dr. Sharbrough also never has taken the position that petitioner's neurological problems were not responsible for her seizures.

Petitioner faults the special master for not weighing the probativeness of respondent's medical expert against Dr. Sharbrough and cites deficiencies in Dr. Kohrman's testimony. Respondent correctly rejoins that the burden of proof is petitioner's. The special master may find that petitioner fails to discharge that burden, even without consideration of respondent's evidence. *See Thibaudeau*, 24 Cl.Ct. at 402–03. Review of the record underlying the special master's decision shows that this is such a case.*

■ An expert opinion, even uncontroverted, is not binding on the trier of fact. "[The judgments] of an expert can be no better than the soundness of the reasons that stand in support of them." *Fehrs v. United States*, 223 Ct.Cl. 488, 508, 620 F.2d 255, 265 (1980). " '[I]t is axiomatic that the trier of fact is not bound to accept expert opinion, even if it is uncontradicted.' " *Del Mar Avionics, Inc. v. Quinton Instr. Co.*, 836 F.2d 1320, 1325 (Fed.Cir.1987) (quoting *Minnesota Mining & Mfg. Co. v. Berwick Indus., Inc.*, 532 F.2d 330, 333 (3d Cir. 1976)); *see Sternberger v. United States*, 185 Ct.Cl. 528, 535–36, 401 F.2d 1012, 1016–

---

* The importance of petitioner's neurological damage is emphasized further by her early left-handedness and febrile convulsions. Dr. Kohrman testified that early left-handedness has been recognized by many neurologists as suggestive of a hemispheric dysfunction in the opposite hemisphere. Therefore, it is a very real possibility that petitioner's early febrile seizures could be related to an earlier hemispheric abnormality. According to Dr. Sharbrough, while febrile convulsions are not considered abnormal in young children, under 90 percent of normal children do not experience them.

Petitioner manifested a number of neurological symptoms considered to be important by all of her doctors. It was this neurological evidence that cast doubt upon the possibility of the

mumps vaccine as being the cause behind petitioner's residual seizure disorder. Dr. Darland described petitioner on March 21, 1964, as being "hyperactive and dystonic" and on April 13, 1972, as "hyper-active and uncoordinated." Dr. Darland is not the only doctor who made note of petitioner's pre-existing neurologic history. Both Drs. George J. Wolcott and Bender refer to her prior manifestations of neurologic symptomatology.

Petitioner's school records also imply a certain amount of abnormal neurologic functions. These records show that while petitioner was in kindergarten she exhibited greatly improved coordination, thereby implying that there had been a certain lack of coordination in her movements in the past.

17 (1968) ("Even uncontradicted opinion testimony is not conclusive if it is intrinsically nonpersuasive.").

The special master's decision demonstrates a consideration of all petitioner's evidence, a careful evaluation of her medical evidence, and a weighing of that evidence consistent with the standards for proving causation in fact, and the decision is supported by a more than adequate factual basis. This decision was neither arbitrary nor capricious.

## CONCLUSION

Accordingly, based on the foregoing, the decision of the special master is sustained, and the Clerk of the Court shall enter judgment dismissing the petition.

No costs on review.