Matthew James HUSTON, Petitioner,

v.

**SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–1080V.

United States Court of Federal Claims.

Nov. 25, 1997.

John R. Brydon, San Francisco, CA, for petitioner.

Mark C. Raby, United States Department of Justice, Washington, DC, for respondent, with whom were Frank W. Hunger, Assistant Attorney General, John Lodge Euler, Acting Director, Torts Branch, Civil Division, and Mark W. Rogers, Trial Attorney, Torts Branch, Civil Division.

## OPINION

MARGOLIS, Judge.

This case is before the Court on petitioner's motion for review of the Special Master's May 12, 1997 decision denying petitioner's claim for compensation under the National Vaccine Injury Compensation Program ("Vaccine Act"), 42 U.S.C. § 300aa–1 *et seq.* Special Master John F. Edwards denied petitioner compensation because he found that

petitioner failed to prove by a preponderance of the evidence that a measles-mumps-rubella ("MMR") vaccination caused him to suffer transverse myelitis. After carefully reviewing the record, and after hearing oral argument, the Court affirms the Special Master's decision.

## FACTS

Petitioner, Matthew James Huston, received an MMR vaccination on March 6, 1974, at age one. On the evening of March 26, 1974, petitioner's mother brought him to the emergency room because he suddenly started screaming and lost the ability to stand or crawl. Petitioner's condition deteriorated throughout the early morning hours of March 27, 1974. His temperature rose to 103° Fahrenheit, he became progressively more lethargic, his head began to bob, and his respirations became shallow and slow. On the morning of March 27, 1974, petitioner's pediatrician, P. Colin Kelly, M.D., admitted petitioner into Memorial Hospital Medical Center in Long Beach, California. At the hospital, petitioner's parents noted that a family friend, who had close contact with petitioner, had been ill with headache and myalgia. Petitioner's mother also told an attending physician that petitioner had an upper respiratory infection ("URI") two weeks prior with fever. Petitioner underwent multiple tests to determine the cause of his condition. On May 27, 1974, after two months in the hospital, Dr. Kelly discharged petitioner from Memorial Hospital Medical Center with diagnoses of transverse myelitis and residual quadriplegia. In a letter written in March 1979, transferring petitioner's care to another doctor, Dr. Kelly stated that no etiologic agent could be determined for petitioner's condition, but he implicated the MMR vaccination because petitioner became ill approximately two weeks following its administration. Dr. Kelly also noted, however, that petitioner's titres for measles and mumps on both the spinal fluid and the blood were not significantly elevated and that petitioner's repeat measles complement fixation titre in September of 1977 was less than two.

Petitioner filed a claim for relief under the Vaccine Act on September 19, 1990, asserting that the MMR vaccination he received on March 6, 1974 caused him to suffer transverse myelitis which, in turn, left him a quadriplegic. On June 29, 1992, the Special Master convened an evidentiary hearing on entitlement. Petitioner and respondent only presented expert testimony at this hearing. Gregory R. Bonomo, M.D., a neurologist who treated petitioner in March 1974 for transverse myelitis, and Kevin C. Geraghty, M.D., testified for petitioner. W.C. Wiederholt, M.D., and Barry G. Arnason, M.D., testified for respondent.

Dr. Bonomo and Dr. Geraghty testified that petitioner's transverse myelitis was a complication of a natural measles infection which he acquired from his MMR vaccination. All the experts agreed that a measles infection that developed from the MMR vaccine could cause transverse myelitis. The Special Master, however, found no evidence that petitioner sustained a direct measles infection from his MMR vaccination. Petitioner's physicians did not isolate measles virus in cultures taken from petitioner's cerebrospinal fluid, rectal swab, or throat swab. All the experts agreed that petitioner failed to exhibit symptoms of a clinical infection with measles, mumps, or rubella, such as koplik spots, measles exanthem, or rash. Additionally, there was no evidence that petitioner developed antibodies to the vaccination. Petitioner and respondent's experts provided different explanations for petitioner's failure to develop antibodies in response to the vaccination. Dr. Bonomo claimed that the lack of a rise in antibody titre was due to a depression of petitioner's titres caused by an overwhelming infection or steroid therapy. Dr. Geraghty asserted that petitioner's transverse myelitis was caused by the failure of petitioner's flawed immune system to properly process the MMR vaccine. Dr. Geraghty claimed that there was no antibody response to the MMR vaccination because an immune dysfunction compelled an exclusively cell-mediated response to the vaccination.

In contrast, Dr. Wiederholt and Dr. Arnason testified that petitioner's failure to develop antibodies showed that there was no response to the MMR vaccination. Dr. Wiederholt further explained that the vac-

cine probably failed because it was defective or because there is higher risk of vaccine failure in children under 15 months than in older children. Respondent's experts disagreed with Dr. Bonomo's assertion that a concurrent, infectious illness or steroid therapy prevented petitioner's antibodies from rising. Dr. Wiederholt and Dr. Arnason did agree with Dr. Geraghty that children with immunoglobulin anemia could have a cell-mediated response to measles in the absence of an antibody response, but a cell-mediated immune response would cause a measles rash. All the experts and petitioner's treating physicians agreed that the only rash which appeared on petitioner was not related to measles. Additionally, Dr. Wiederholt, testified that there was no evidence to suggest that petitioner had an immunological problem. In fact, while hospitalized, petitioner's treating physicians tested him for an immunological deficiency and found him to be normal.

Finally, the experts interpreted petitioner's symptoms of URI following his vaccination and before the onset of his transverse myelitis differently. Dr. Bonomo and Dr. Geraghty claim that petitioner's URI symptoms were a manifestation of the MMR vaccine. Dr. Wiederholt and Dr. Arnason, on the other hand, considered the symptoms nonspecific and asserted that the exposure of petitioner to a person with headache and myalgia was the probable cause of any URI symptoms.

After weighing the testimony of Dr. Bonomo and Dr. Geraghty against the testimony of Dr. Wiederholt and Dr. Arnason, the Special Master concluded that petitioner failed to establish by a preponderance of the evidence that the March 6, 1974 MMR vaccination caused his transverse myelitis. Consequently, the Special Master denied petitioner's claim for compensation under the Vaccine Act. This appeal followed.

## DISCUSSION

This Court must affirm a Special Master's decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 42 U.S.C. § 300aa–12(e)(2)(B) (Supp.1997); *Whitecot-*

*ton v. Secretary of Health and Human Servs.*, 81 F.3d 1099, 1104 (Fed.Cir.1996); *Hines v. Secretary of Dep't of Health and Human Servs.*, 940 F.2d 1518, 1523 (Fed.Cir. 1991). The Vaccine Act contemplates three distinct levels of review: fact findings are reviewed under the arbitrary and capricious standard; legal questions under the not in accordance with law standard; and discretionary rulings under the abuse of discretion standard. *See Munn v. Secretary of Dep't of Health and Human Servs.*, 970 F.2d 863, 870 n. 10 (Fed.Cir.1992); *Johnson v. Secretary of Health and Human Servs.*, 33 Fed.Cl. 712, 720 (1995), *aff'd,* 99 F.3d 1160 (Fed.Cir.1996); *Cox v. Secretary of Dep't of Health and Human Servs.*, 30 Fed.Cl. 136, 142 (1993). The issue before the Court on this appeal, namely whether the evidence of record warrants a conclusion that a vaccine caused an injury, calls for review under the arbitrary and capricious standard. *See Hines,* 940 F.2d at 1527; *Van Epps v. Secretary of Dep't of Health and Human Servs.*, 26 Cl.Ct. 650, 652–53 (1992); *Murphy v. Secretary of Dep't of Health and Human Servs.*, 23 Cl.Ct. 726, 729 (1991), *aff'd,* 968 F.2d 1226 (Fed.Cir. 1992). The arbitrary and capricious standard of review is highly deferential to the factual findings of the Special Master. *See Hodges v. Secretary of Dep't of Health and Human Servs.*, 9 F.3d 958, 961 (Fed.Cir. 1993); *Hines,* 940 F.2d at 1528. The high level of deference is especially appropriate in a case such as this where the medical evidence of causation is in dispute. *See Hodges,* 9 F.3d at 961. Therefore, as long as the Special Master considered all the relevant evidence of record, made no clear error in judgment, drew plausible inferences, and articulated a rational basis for the decision, the decision should be affirmed. *See Hines,* 940 F.2d at 1527–28; *Johnson,* 33 Fed.Cl. at 720; *McClendon v. Secretary of Dep't of Health and Human Servs.*, 24 Cl.Ct. 329, 337 (1991). Applying these standards to the present case, the Court concludes that the Special Master's decision to deny petitioner's claim because petitioner failed to establish by a preponderance of the evidence that the March 6, 1974 MMR vaccination caused his transverse myelitis was not arbitrary or capricious.

To recover under the Vaccine Act, petitioner bears the burden of proving by a preponderance of the evidence that he sustained an injury or condition set forth in the Vaccine Injury Table or that he sustained an injury or condition not set forth in the Vaccine Injury Table, but which was caused-in-fact by a vaccine. *See* 42 U.S.C. § 300aa–11(c)(1)(c)(i) and (ii)(I); *Hines,* 940 F.2d at 1524–25. Petitioner conceded that transverse myelitis is not listed as a condition that is associated with the MMR vaccine on the Vaccine Injury Table. The Vaccine Act, therefore, required petitioner to prove to the Special Master by a preponderance of the evidence that the MMR vaccine was the cause-in-fact of his transverse myelitis. *See* 42 U.S.C. § 300aa–13(a); *Hines,* 940 F.2d at 1525. Causation-in-fact requires proof of a logical sequence of cause and effect showing that the vaccination was the reason for the injury. *See Grant v. Secretary of Dep't of Health and Human Servs.,* 956 F.2d 1144, 1148 (Fed.Cir.1992); *Hines,* 940 F.2d at 1525. A reputable medical or scientific explanation must support this logical sequence of cause and effect. *See Grant,* 956 F.2d at 1148; *Strother v. Secretary of Dep't of Health and Human Servs.,* 21 Cl.Ct. 365, 370 (1990), *aff'd,* 950 F.2d 731 (Fed.Cir.1991). Temporal association of the onset of the injury with the vaccination is not sufficient to establish causation-in-fact. *See Grant,* 956 F.2d at 1148; *Strother,* 21 Cl.Ct. at 369. Additionally, showing an absence of an alternative cause of injury does not meet petitioner's affirmative duty to show causation. *See Grant,* 956 F.2d at 1149. If petitioner satisfies the preponderance of evidence standard by showing that it is more likely than not that the vaccine actually caused the injury, the burden shifts to respondent to prove, by a preponderance of evidence, that a factor unrelated to the administration of the vaccine in question caused the injury. *See Grant,*

956 F.2d at 1149–50; *McClendon,* 24 Cl.Ct. at 333–34.

In the present motion for review, petitioner claims that the Special Master's decision denying him relief under the Vaccine Act was arbitrary and capricious because petitioner presented sufficient evidence that the MMR vaccination caused his transverse myelitis. More specifically, petitioner complains that the Special Master unreasonably rejected the testimony of petitioner's experts and that petitioner's evidence, showing a biologic plausibility for a causal relation between the MMR vaccine and transverse myelitis, considered together with the temporal association of the onset of the injury with the vaccination, was sufficient to prove causation-in-fact by a preponderance of the evidence.[1] The Court rejects petitioner's arguments.

First, the Court notes that contrary to what petitioner claims in his motion for review, a showing of biologic plausibility and temporal association is insufficient to prove by a preponderance that a certain vaccine caused a certain injury. *See Hasler v. United States,* 718 F.2d 202, 205–06 (6th Cir.1983) (noting that a temporal relationship and evidence that rheumatoid arthritis can result from an antibody antigen reaction to a swine flu shot is not sufficient to prove causation-in-fact); *Yergert v. Secretary of Dep't of Health and Human Servs.,* No. 90–2228V, slip op. at 10, 1995 WL 108673 (Fed.Cl.Sp. Mstr. Feb. 24, 1995) (concluding that plausibility plus temporal relationship constitutes insufficient proof of causation-in-fact); *see also Grant,* 956 F.2d at 1148 (explaining that temporal association alone does not prove causation-in-fact); *Van Epps,* 26 Cl.Ct. at 654 (finding expert testimony that the mumps vaccine could be the cause of petitioner's disorder failed to satisfy the causation-in-fact requirement); *Doe v. Secretary of Dep't of Health and Human Servs.,* 19 Cl.Ct. 439, 450

---

1. Petitioner also claims that the Special Master's decision was arbitrary and capricious because the Special Master allegedly based his decision to deny compensation on an unsupported finding that the vaccine was defective and contained no live virus. The petitioner, however, misinterprets the Special Master's decision. The Special Master's decision in fact noted that the probability that the vaccine was either defective or that

petitioner was among the many recipients for whom the vaccine did not work, provided a more persuasive explanation for petitioner's lack of an antibody response to the MMR vaccination than Dr. Geraghty's immune dysfunction theory. The Special Master based this conclusion on the medical records, expert testimony, and medical literature.

(1990) (finding an assertion that it was "highly possible" that a child's encephalopathy was related to an MMR immunization insufficient to prove causation by a preponderance of the evidence). To prove by a preponderance that the MMR vaccination was the cause-in-fact of petitioner's transverse myelitis, petitioner had to do more than demonstrate that the MMR vaccine could cause transverse myelitis. Petitioner needed to prove a logical sequence of cause and effect showing that the March 6, 1974 MMR vaccination actually caused his transverse myelitis. *See Hines,* 940 F.2d at 1525; *Grant,* 956 F.2d at 1148; *see also Gherardi v. Secretary of Dep't of Health and Human Servs.,* No. 90–1466V, slip op. at 4, 1997 WL 53449 (Fed.Cl.Sp.Mstr. Jan. 24, 1997) (explaining that proof of a logical sequence of cause and effect requires a showing that it is biologically plausible for the vaccine to cause the alleged injury and that the vaccine actually caused petitioner's particular injury). Therefore, the Special Master properly rejected any suggestion by petitioner that biological plausibility and temporal relationship was sufficient to establish vaccine causation.

▪▪▪▪ Second, the Court notes that expert opinion, even if uncontradicted, is not binding on the Special Master. *See* 42 U.S.C. § 300aa–13(b)(1); *Bunting v. Secretary of Dep't of Health and Human Servs.,* 931 F.2d 867, 873 (Fed.Cir.1991); *Perreira v. Secretary of Dep't of Health and Human Servs.,* 27 Fed.Cl. 29, 34 (1992), *aff'd,* 33 F.3d 1375 (Fed.Cir.1994); *Thibaudeau v. Secretary of Dep't of Health and Human Servs.,* 24 Cl.Ct. 400, 403 (1991). The Special Master may reject an expert's testimony as long as a reasonable basis for doing so is explained. *See Johnson,* 33 Fed.Cl. at 726; *Summar v. Secretary of Dep't of Health and Human Servs.,* 24 Cl.Ct. 440, 444–45 (1991). The Special Master is entitled to weigh the testimony and other evidence and to draw reasonable inferences. *See Johnson,* 33 Fed. Cl. at 726. This Court cannot substitute its judgment for that of the Special Master when he has considered the evidence and weighed it accordingly. *See id.; Summar,* 24 Cl.Ct. at 445.

In the present case, the Special Master dedicated the majority of his 16–page opinion to carefully considering each expert's testimony and weighing the testimony of petitioner's experts against the testimony of respondent's experts. The Special Master was ultimately unpersuaded by petitioner's experts, and he provided a reasonable basis for that conclusion. Namely, the facts in this case did not support petitioner's experts' theory that petitioner's transverse myelitis was a complication of a natural measles infection which he acquired from the MMR vaccination. The Special Master noted that there was no evidence that petitioner developed a measles infection from the MMR vaccination and no evidence that petitioner developed antibodies in response to the MMR vaccination. Dr. Geraghty asserted that petitioner failed to have a normal antibody response to the MMR vaccination because petitioner had an immune dysfunction that compelled an exclusively cell-mediated response to the MMR vaccination. The Special Master, however, concluded that Dr. Geraghty's opinion amounted only to speculation because Dr. Geraghty could not identify a definite immune dysfunction suffered by petitioner and because, as Dr. Geraghty himself conceded, his opinion lacked adequate foundation in the medical literature. The Court, therefore, concludes that the Special Master provided a reasonable basis for rejecting the testimony of petitioner's experts. Furthermore, upon a review of the entire record in this case, the Court finds that the Special Master considered all the relevant evidence, drew reasonable inferences, and clearly articulated a rational basis for his decision that petitioner failed to prove by a preponderance of the evidence that the March 6, 1974 MMR vaccination caused his transverse myelitis. *See Hines,* 940 F.2d at 1528. The Court cannot, therefore, find the Special Master's decision arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, the Court affirms the Special Master's decision denying petitioner's claim for compensation under the

Vaccine Act. The clerk shall enter judgment accordingly.